UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COREY DECKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:15-cv-00586-RLY-DML |
| ) | |
| CITY OF GREENFIELD, ) | |
| JOHN JESTER, in his official and ) | |
| individual capacities, and ) | |
| RANDY RATLIFF, in his official and ) | |
| individual capacities, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, Corey Decker, is a police officer with the Greenfield Police Department ("GPD"). He brings a number of federal and state law claims against the City of Greenfield, Chief John Jester and Lt. Randy Ratliff in their individual and official capacities, arising out of text messages he sent to GPD Lt. Terry Austin on his private cell phone and for which he received discipline. His First Amended Complaint consists of the following federal claims[1] brought pursuant to 42 U.S.C. § 1983: (1) violation of his First Amendment right to freedom of speech; (2) retaliation for engaging in protected

---

[1] In Count III, Plaintiff alleges that the Defendants' violated his Fourth Amendment rights by reading the text messages that were found on Lt. Austin's cell phone pursuant to a search warrant. Plaintiff withdrew this claim in his Response.

1

speech; and (3) two *Monell* claims against the City for failure to supervise and failure to discipline. He also brings state law claims for: (4) invasion of privacy under Indiana law; and (5) negligence under Indiana law. Defendants now move for judgment on the pleadings. For the reasons set forth below, the motion is **GRANTED in part** and **DENIED in part**.

## I.     Standard of Review

After the pleadings are closed, a party may move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The pleadings include the complaint, answer, and any written instrument attached as exhibits, such as a contract. Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes.").

A motion for judgment on the pleadings "is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). To survive a Rule 12(b)(6) motion, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading that offers nothing more than naked assertions, "labels and conclusions," or a recitation of the elements of a cause of action is insufficient to meet Rule 8's pleading standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

2

For purposes of ruling on Defendants' motion, the court accepts Plaintiff's well-pleaded factual allegations as true and construes all reasonable inferences in his favor. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015).

In support of the Defendants' motion, they attached eleven exhibits to their motion. The exhibits include, *inter alia*: the March 22, 2014 Affidavit of Probable Cause to search Lt. Austin's cell phone (Filing No. 31-1, Ex. A); the search warrant which allowed the search of Lt. Austin's cell phone (Filing No. 31-2, Ex. B); Chief Jester's memorandum concerning Plaintiff's three-day suspension (Filing No. 31-3, Ex. C); the City of Greenfield's Board of Public Works and Public Safety Minutes of the September 9, 2014 meeting (Filing No. 31-4, Ex. D); the September 9 and 10 news articles concerning Plaintiff's suspension (Filing No. 31-5, Ex. E; Filing No. 31-6, Ex. F); Chief Jester's notice of promotion opportunities (Filing No. 31-7, Ex. G); the Chronological Case Summary ("CCS") of Lt. Austin's criminal case concerning bribery and official misconduct (Filing No. 31-8, Ex. H); the reported opinion of *Austin v. State*, 36 N.E.3d 2, No. 30A04-1412-CR-589, 2015 WL 3965688 (Table) (Ind. Ct. App. 2015); (Filing No. 31-9, Ex. I); the CCS of Lt. Austin's criminal case for promoting prostitution (Filing No. 31-10, Ex. J; and the Order granting Lt. Austin's motion to suppress evidence in his case concerning the charge of promoting prostitution (Filing No. 31-11, Ex. K). Plaintiff argues these exhibits should be excluded because he did not submit them as part of his First Amended Complaint.

Plaintiff's argument is misplaced. "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (citing *Venture Assocs. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)). While this is a motion for judgment on the pleadings, the court finds the reasoning of the *Wright* Court applies with equal force. *Adams*, 742 F.3d at 727-28. Accordingly, the documents attached to Defendants' Amended Answer that are central to Plaintiff's claims will be considered by the court. Those exhibits include Exhibits A-G, I, J and K; Exhibit H, the CCS of Lt. Austin's criminal case, will not be considered.

In addition, the court may take judicial notice of proceedings in other courts if the proceedings have a direct relation to the matters at issue. *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983). The unpublished decision of Lt. Austin's criminal case was built upon Detective Johnson's internal investigation. However, the decision merely upheld Lt. Austin's criminal conviction for bribery. Thus, while the court may take judicial notice of the adjudicative fact of Lt. Austin's conviction, the court will not take judicial notice of the facts set forth therein.

**II.     Background**

On March 4, 2014, Detective Amy Johnson with the Indiana State Police ("ISP") began an investigation into allegations concerning Lt. Austin for official misconduct. (Filing No. 28, First Amended Complaint ("Am. Compl.") ¶ 19). Detective Johnson was granted a warrant to search Lt. Austin's cell phone by a Marion Superior Court Judge.

4

(*Id.* ¶ 22; Filing No. 31, Answer to First Amended Complaint ("Am. Answer"); Filing No. 31-2, Am. Answer, Ex. B).  Pursuant to the search warrant, the cell phone was seized and a forensic download was made, resulting in approximately 71,000 text messages. (Am. Compl. ¶ 23).  ISP shared the results of the forensic download with Lt. Randy Ratliff for use in an internal affairs investigation of Lt. Austin.  (*Id.* ¶ 24).

On May 14, 2014, Plaintiff was interviewed by law enforcement concerning text messages that were discovered.  (*Id.* ¶ 30).  In that interview, Plaintiff answered in the affirmative when asked if he thought Major Derek Towle should be removed from the SWAT Team.  (*Id.*).  The following day, Major Towle approached Plaintiff and confronted him about his answer and, from then on, treated Plaintiff in a hostile manner. (*Id.* ¶ 33).  Consequently, Plaintiff felt forced to resign his leadership position on the SWAT Team.  (*Id.*).

On July 28, 2014, Chief John Jester issued a memorandum notifying Plaintiff that he would be suspended for three days without pay. (*Id.* ¶ 36).  He determined that several of the text messages he sent to Lt. Austin "would be considered threats of violence to members of the Command Staff of the police department."  (Am. Answer, Ex. C).  In addition to Plaintiff, four other officers were disciplined as a result of the text messages that were discovered and reviewed by GDP: (1) Eric Fields, (2) Stephen Calk, (3) Jimmy Condra, and (4) Mac Holland.  (Am. Compl. ¶ 34; Am. Answer, Ex. F).  Plaintiff alleges that "one or more" of those officers indicated that they would be supportive of Lt. Austin becoming the next GDP chief of police.  (Am. Compl. ¶ 34).

On July 30, 2014, Plaintiff requested a review of his suspension, and the evidence against him, by the City's Board of Public Works and Public Safety. (Am. Compl. ¶ 41). Plaintiff learned through the local newspaper, The Daily Reporter, that his request for review had been denied. (*Id.* ¶ 42; Am. Answer, Ex. F).

In November 2014, Plaintiff alleges he was "unduly reprimanded" by GDP, and that in April 2015, Plaintiff "was passed up" for a promotion to corporal. (Am. Compl. ¶¶ 45-46).

Plaintiff filed the present lawsuit on April 13, 2015.

### III. Discussion

The court will begin its discussion with Plaintiff's federal claims brought under Section 1983. To state a claim under Section 1983, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct deprived her of rights, privileges, or immunities secured by the Constitution. *Kitzman-Kelley v. Warner*, 203 F.3d 454, 457 (7th Cir. 2000). Element (1) is undisputed; Chief Jester and Lt. Ratliff were acting under color of state law when the actions and decisions that form the basis of Plaintiff's Section 1983 federal claims occurred. The court therefore focuses its attention to element (2).

#### A. The Federal Claims

##### 1. Duplicative Claims

As an initial matter, the court addresses Defendants' request for dismissal of the official capacity claims against Chief Jester and Lt. Ratliff as duplicative of his *Monell*

6

claims against the City of Greenfield.  A claim against an individual in his official capacity is "in all respects other than name, to be treated as a suit against the [municipal] entity . . . for the real party in interest is the entity."  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the [Section 1983] suit because they assume the identity of the government that employs them.").  Because the City is the real party in interest here, the official-capacity claims against Chief Jester and Lt. Ratliff are dismissed as duplicative of the claims against the City.  The City's motion to dismiss with respect to Plaintiff's Section 1983 claims against Chief Jester and Lt. Ratliff in their official capacity is therefore **GRANTED**.

### 2. First Amendment Claim (Count I)

In Count I, Plaintiff alleges that Chief Jester and Lt. Ratliff violated his First Amendment right to free speech, and that "Defendants' actions, omissions, or failures cause[d] Plaintiff to suffer harm."  (Filing No. 28, Am. Compl. ¶ 55).  The court presumes Plaintiff's text messages discovered during the investigation of Lt. Austin for misconduct constitutes the speech at issue.  The court cannot discern, however, *how* Defendants caused him harm – i.e., *how* they abridged his freedom of speech.  A complaint's allegations need not be exhaustive, but they must present sufficient factual content from which the court can make a reasonable inference that the defendant is liable for the conduct alleged.  *Iqbal*, 556 U.S. at 678.  Plaintiff's claim may be dismissed on this basis alone.  Furthermore, to the extent Count I is based upon his suspension, his

claim is subsumed within his First Amendment retaliation claim (Count II). Accordingly, Count I is dismissed.

### 3. First Amendment Retaliation (Count II)

In Count II, Plaintiff alleges that Chief Jester and Lt. Ratliff retaliated against him for exercising his First Amendment right to free speech. This claim appears to be based upon his three-day suspension without pay for the text messages at issue. (*See id.* ¶ 61 ("Defendants' actions or omissions while enacting punishment against Mr. Decker constituted a violation and deprivation of Plaintiff's right under the [First Amendment].")).

A prima facie case of First Amendment retaliation requires a plaintiff to show that: (1) his speech was constitutionally protected; (2) he suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's action. *George v. Walker*, 535 F.3d 535, 538 (7th Cir. 2008) (citing *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "Under the first prong, speech is constitutionally protected if '(1) the employee spoke as a citizen on matters of public concern, and (2) the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees.'" *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1123 (7th Cir. 2009) (quoting *Sigsworth v. City of Aurora*, 487 F.3d 506, 509 (7th Cir. 2007)). Whether a public employee's speech addresses a matter of public concern must be determined by the "content, form, and context" of the employee's statement based on

8

the record as a whole. *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). "Speech deals with a matter of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (quoting *Connick*, 461 U.S. at 146). Speech that serves only a private or personal interest, as opposed to a community one, is not protected. *Gustafson v. Jones*, 290 F.3d 895, 907 (7th Cir. 2002) (citing *Connick*, 461 U.S. at 146).

Defendants' argue Plaintiff's suspension was based on the following two text messages sent on February 14 and 15, 2014, respectively:

(1) "I ain't doing dick for this place, I keep trying to get t boned so I can get a PTS Day, like bitch ass mcmichael."

(2) "I'm gonna punch mcchuck[2] in the mouth, then Guinn, then kick mundens belly."

(Am. Answer ¶ 27). The memorandum sent by Chief Jester suspending Plaintiff without pay reads in pertinent part:

> As you are aware Lt. Randy Ratliff, [sic] has been conducting an internal investigation at my request. During his investigation it was determined that you have violated several Standard Operating Procedures of the Greenfield Police Department. During that investigation, it was determined that you had sent several disturbing text messages. Several of those messages would be considered threats of physical violence to members of the Command Staff of

---

[2] "Mcchuck" is Sgt. Chuck McMichael, Plaintiff's supervisor. "Guinn is Captain Brian Guinn, head of the Road Division, and "mundens" is Captain Joe Munden, head of the Support Division.

9

the police department. There was also a text message that stated you would be actively trying to get into a crash, in order to get a day off, like "bitch ass McMichael." These text messages are violations of the Standard Operating Procedures, and the City of Greenfield Policy and Procedure Manual.

(Am. Compl., Ex. C).

The court agrees with Defendants; the two text messages addressed above do not constitute speech on a matter of public concern. The text messages discuss threats of violence to other members of the GPD and a threat to wreck Plaintiff's vehicle (City property) in order to get a day off. Threats of this sort do not merit constitutional protection. *Virginia v. Black*, 538 U.S. 343, 359 (2003) (citing *Watts v. United States*, 394 U.S. 705, 708 (1969)) (holding that "true threats" – statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to another – are not protected speech).

Plaintiff responds that Defendants are erroneously confining the court's analysis to only these two text messages. "In at least one of those 71,000 messages," he argues he "complained to other officers about the lack of leadership at GDP and the commanding officers." He therefore asks for a reasonable opportunity to conduct discovery, including a review of the 71,000 text messages at issue, to build his case.

Defendants' Amended Answer contains the content of twenty-seven text messages between Plaintiff and Lt. Austin, including the two mentioned above, in table form. (*See* Am. Answer ¶ 27). The Amended Answer suggests the GPD is in possession of more than twenty-seven text messages between Plaintiff and Lt. Austin because it notes that the

text messages are "among others." (*Id.*). This leads the court to conclude that of the 71,000 text messages involving Plaintiff, it is plausible that some of them constitute protected speech. Consequently, the court will allow Count II to remain.

### 4. *Monell* Claims

In Counts IV and V, Plaintiff brings two *Monell* claims against the City. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a local government can be sued under Section 1983, but only "when execution of a government's policy or custom . . . inflicts the injury"). To establish *Monell* liability, "a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (citing *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)). A plaintiff may demonstrate the existence of a municipal policy or custom in one of three ways: (1) the enforcement of an express policy that causes the loss; (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage that caused the loss, or (3) causation of the loss by a person with final policymaking authority. *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467-68 (7th Cir. 2010) (citing *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001)); *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999).

In Count IV, Plaintiff alleges that Chief Jester, as the final policymaker, violated Plaintiff's right to free speech by suspending him without pay based on the content of his

11

text messages.  Defendants argue this claim cannot survive because a municipality may only be liable if there is an underlying constitutional violation, and there is not one here. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (holding that jury's finding of no constitutional injury removed basis for liability against the municipality).  Because, with the benefit of discovery, there may be text messages sent by Plaintiff that support his underlying First Amendment retaliation claim, the court cannot rule as a matter of law that Plaintiff fails to state a *Monell* claim against the City.  Accordingly, Count IV against the City regarding the discipline he received remains.

Also in Counts IV and V, Plaintiff brings *Monell* claims against the City for failure to supervise and for failure to discipline.  To establish liability based on the City's failure to supervise and discipline its officers, the plaintiff must show "deliberate indifference" on the part of the City.  *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks and citation omitted).  Thus, when City policymakers are on actual or constructive notice that their persistent failure to supervise and/or discipline subordinates will cause constitutional violations, the City may be deemed deliberately indifferent to the consequences of its inaction.  *Id.*

In Count IV, Plaintiff alleges that the City "consciously disregarded the risk that Chief Jester presented to individuals he supervised" and that the City's "deliberate action

12

or inaction was the moving force behind the Plaintiff's injury or injuries." (Am. Comp. ¶¶ 77-78). Defendants argue this claim is deficient because it merely asserts a formulaic recitation of the elements of a cause of action under *Monell*. *Twombly*, 550 U.S. at 557. The court agrees. Count IV contains no allegations from which the court could reasonably infer that the City consciously disregarded a risk that Chief Jester posed to those he supervised, nor allegations sufficient to show that the City was the "moving force" behind his injuries.

In Count V, Plaintiff alleges that the City "failed to appropriately respond to repeated complaints and violations of Chief Jester and/or other GPD Officers." (Am. Compl. ¶ 82). He further alleges: "[The City] consciously disregarded a risk that Chief Jester and/or other GPD officers presented to individuals they supervised"; "[the City], due to its customs and practices, through its deliberate action or inaction was the moving force behind Plaintiff's injury"; "the City facilitated the violation of Plaintiff's rights by failing to adequately address disciplinary actions during similar circumstances"; and "[t]he chief policymaker or makers for [the City] ratified the unlawful actions of Chief Jester by failing to enforce appropriate discipline or employed a system that was grossly deficient." (*Id*. ¶¶ 83-86).

As argued by Defendants, Plaintiff's Count V provides the court with the elements of a *Monell* claim, but fails to allege any facts to show an entitlement to relief. For example, he fails to allege any facts concerning the "repeated complaints" or "violations" of Chief Jester that the City received and failed to address. He also fails to identify the

"customs and practices" of the City that were the "moving force" behind his injury. Accordingly, Count V is dismissed.

### B. State Law Claims

#### 1. Invasion of Privacy by False Light

In Count VI, Plaintiff alleges Chief Jester and the City committed the tort of invasion of privacy by false light. This claim is based upon the following allegation:

> Mr. Decker was notified, through the local newspaper, The Daily Reporter, by an article written by Noelle M. Steele, published online on or about September 9, 2014, as well as on the front page of the newspaper on or about September 10, 2014, that his request for review and appeal of suspension/disciplinary action was denied.

(Am. Compl. ¶ 42). Indiana follows the Restatement (Second) of Torts, which reads:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 958 (Ind. Ct. App. 2014). The tort of invasion of privacy is similar to defamation; however, invasion of privacy involves injuries to emotions and mental suffering while defamation involves injuries to reputation. *Id.* Like a claim for defamation, truth is an absolute defense to a claim for invasion of privacy. *Id.*

14

Plaintiff has not pleaded that the City published the September 9, 2014 online version nor the September 10, 2014 print version of the *Daily Reporter* article discussing Plaintiff's suspension and the Board of Works' decision denying him a hearing.  Plaintiff has not pleaded that the City contacted Nelle Steele from the *Daily Reporter* and asked her to publish the articles.  Most importantly, the *Daily Reporter* did not publish false information.  The article states: "Greenfield Police Department Chief John Jester handed down a three-day unpaid suspension for Patrolman Corey Decker."  The article also stated: "Decker is accused of sending text messages that violated department policies . . . . ." and "[t]he board [of public works] was divided on how to proceed, voting 3-2 to suspend the officer without a hearing."  (Am. Answer, Ex. F).  These statements are entirely true.  Accordingly, Count VI must be dismissed.

### 2. Negligence

Finally, in Count VII, Plaintiff alleges Defendants owed him a duty, breached that duty, and caused him injury.  Again, this count merely recites the elements of a cause of action for negligence and is insufficient to meet the pleading standards of Rule 8.  *Iqbal*, 556 U.S. at 678.  Accordingly, Count VII is dismissed.

### IV. Conclusion

The court finds Defendants' Motion for Judgment on the Pleadings (Filing No. 32) should be **GRANTED in part** and **DENIED in part**.  Defendants' motion is **GRANTED** with respect to Plaintiff's official capacity claims against Chief Jester and Lt. Ratliff, his First Amendment claim (Count I), Fourth Amendment Claim (Count III),

*Monell* claims against the City for failure to supervise and discipline (Counts IV in part and V), and state law tort claims for invasion of privacy by false light (Count VI) and negligence (Count VII). Defendants' motion is **DENIED** with respect to Plaintiff's First Amendment retaliation claim (Count II) and his First Amendment *Monell* claim (Count IV in part) regarding his suspension.

**SO ORDERED** this 6th day of January 2016.

                                            RICHARD L. YOUNG, CHIEF JUDGE
                                            United States District Court
                                            Southern District of Indiana

Distributed Electronically to Registered Counsel of Record