UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COREY DECKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:15-cv-00586-RLY-DML |
| ) | |
| CITY OF GREENFIELD, ) | |
| JOHN JESTER, in his official and ) | |
| individual capacities, and ) | |
| RANDY RATLIFF, in his official and ) | |
| individual capacities, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Corey Decker, is a police officer with the Greenfield Police Department ("GPD"). He brings claims against the City of Greenfield, Chief John Jester, and Lt. Randy Ratliff in their individual and official capacities, arising out of text messages he sent to GPD Lt. Terry Austin on his private cell phone and for which he was disciplined. Defendants now move for summary judgment on Counts II and IV of Plaintiff's Complaint, both of which assert First Amendment claims under 42 U.S.C. § 1983. Having reviewed the parties' submissions and the applicable law, the court finds the motion should be **GRANTED**.

**I.    Background**

In early March 2014, Detective Amy Johnson of the Indiana State Police began an investigation into allegations concerning Lt. Terry Austin for official misconduct. (Filing

1

No. 60-3, Deposition of John Jester ("Jester Dep.") at 31-32).  On March 22, she obtained a search warrant to seize and search his private cell phone.  (Filing No. 60-5, Search Warrant).  Based upon Detective Johnson's investigation, Lt. Austin was charged with bribery and official misconduct.  (Filing No. 60-6, Information, Affidavit of Probable Cause, Criminal Notice, and Felony Arrest Warrant).

During the investigation, Detective Johnson documented and downloaded almost 71,000 text messages sent or received by Lt. Austin.  (Filing No. 60-4, Deposition of Randy Ratliff ("Ratliff Dep.") at 17-18).  Lt. Ratliff reviewed the text messages "to further the investigation, make sure there wasn't anything that would exonerate Lieutenant Austin in those messages." (*Id.* at 20).  During his review, he came across "the Corey Decker ones concerning punching people and kicking people, and the fact that he was planning on wrecking a police car." (*Id.* at 21).  Lt. Ratliff contacted Captain Joe Munden and Chief Jester due to his concerns over those messages.  (*Id.*).  Chief Jester instructed Lt. Ratliff to begin an internal affairs investigation as to whether any GPD officer had sent text messages to Lt. Austin which were in violation of the GPD Standard Operating Procedures ("SOPs") and/or the City of Greenfield's Policies and Procedure Manual.  (Jester Dep. at 33).

Lt. Ratliff prepared a report detailing his investigation.  (Ratliff Dep. at 22; Filing No. 60-8, Ratliff's Report).  The last three pages of his report consist of a section entitled "Complaints from Text Messages," which includes a list of the content of 24[1] text

---

[1] Plaintiff sent over 80 text messages to Lt. Austin during this time frame.  (Filing No. 68-8, table listing, *inter alia*, the date, time, cell number, and the content of each text message).

messages sent by Plaintiff to Lt. Austin as well as ten text messages sent by Lt. Austin to Plaintiff. (*See* Ratliff's Report at 10-12). Ratliff presented the report to Chief Jester and the entire GPD command staff at a meeting held at the Hancock County Fraternal Order of Police building. (Jester Dep. at 40; Ratliff Dep. at 50-51). There, the command staff reviewed the information gathered by Lt. Ratliff during his internal affairs investigation pertaining to Officers[2] Steven Kalk, Jim Condra, Matt Holland and Plaintiff. (Jester Dep. at 35, 41-42; *see also* Filing No. 64, Statement of Claims at 3). Chief Jester determined that all four officers, including Plaintiff, would receive discipline for violating the GPD's SOPs and the City's policy and procedure manual. (*Id.* at 42).

On July 28, 2014, Chief Jester issued a memorandum notifying Plaintiff of his three-day suspension without pay. In pertinent part, it reads:

> As you are aware Lt. Randy Ratliff, [sic] has been conducting an internal investigation at my request. During his investigation it was determined that you have violated several Standard Operating Procedures of the Greenfield Police Department. During that investigation, it was determined that you had sent several disturbing text messages. Several of those messages would be considered threats of physical violence to members of the Command Staff of the police department. There was also a text message that stated you would be actively trying to get into a crash, in order to get a day off, like "bitch ass McMichael." These text messages are violations of the Standard Operating Procedures, and the City of Greenfield Policy and Procedure Manual.

(Filing No. 60-9, Notice of Suspension).

On July 30, 2014, Plaintiff requested a review of his suspension by the City's Board of Public Works and Public Safety ("Board"). (Filing No. 28, First Amended Complaint ("Am. Compl.") ¶ 41; Filing No. 31, Amended Answer ¶ 41). During the

---

[2] Officer Eric Fields was also mentioned, but there is no evidence he was ever suspended.

September 9, 2014 Board meeting, a motion to uphold Chief Jester's decision and deny the request for a hearing was approved by a 3-2 vote. (Filing No. 60-11, Minutes from Board of Public Works and Safety at 6). This lawsuit followed.

## II.     Discussion

### A.     Count II, First Amendment Retaliation

In Count II of his Complaint, Plaintiff alleges Chief Jester retaliated against him in violation of the First Amendment by disciplining him over his personal text messages. A prima facie case of First Amendment retaliation requires a plaintiff to show that: (1) his speech was constitutionally protected; (2) he suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's action. *George v. Walker*, 535 F.3d 535, 538 (7th Cir. 2008) (citing *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

The first step in the analysis—whether the plaintiff's speech is constitutionally protected—is a question of law. "[S]peech is constitutionally protected if '(1) the employee spoke as a citizen on matters of public concern, and (2) the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees.'" *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1123 (7th Cir. 2009) (quoting *Sigsworth v. City of Aurora*, 487 F.3d 506, 509 (7th Cir. 2007)). "Speech deals with a matter of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of

4

value and concern to the public.'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Conversely, speech is not a matter of public concern if it involves "merely a personal grievance of interest only to the employee." *Gustafson v. Jones*, 290 F.3d 895, 907 (7th Cir. 2002) (citing *Connick*, 461 U.S. at 146). The court's inquiry is guided by the "content, form, and context" of the employee's statement based on the record as a whole. *Connick*, 461 U.S. at 147-48. Of those factors, content is the most important. *Kristofek v. Village of Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013) (citing *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009)).

In the Defendants' Motion for Judgment on the Pleadings, the Defendants argued that Plaintiff's suspension was based on the following two text messages, sent on February 14 and 15, 2014, respectively:

- 2/14/14  I ain't doing dick for this place, I keep trying to get t boned so I can get a PTS Day, like bitch ass mcmichael
- 2/14/14  I'm gonna punch mcchuck in the mouth, then Guinn, then kick mundens belly[3]

(Filing No. 60-8, Lt. Ratliff's Report to Chief Jester). The court found the text messages did not constitute a matter of public concern because:

> [they] discuss threats of violence to other members of the GPD and a threat to wreck Plaintiff's vehicle (City property) in order to get a day off. Threats of this sort do not merit constitutional protection. *Virginia v. Black*, 538 U.S.

---

[3] "Mcchuck" is Sgt. Chuck McMichael, Plaintiff's supervisor. "Guinn" is Captain Brian Guinn, head of the Road Division, and "mundens" is Captain Munden, head of the Support Division.

>   343, 359 (2003) (citing *Watts v. United States*, 394 U.S. 705, 708 (1969)) (holding that "true threats" – statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to another – are not protected speech).

(Filing No. 52, Entry at 10). Nevertheless, the court denied the motion to give Plaintiff the opportunity to conduct discovery into the 71,000 text messages downloaded from Lt. Austin's cell phone.

In addition to the two text messages listed above, the messages now at issue include:

- 11/20/13  Shady bastards

- 12/25/13  I ask Santa for a new admin, let's see if he comes through;

- 1/1/14  More training, and cover down on a lot of officer safety issues, bob[4] doesn't need to be the training guy

- 1/1/14  Also need to do ILEA fitness standards one or twice a year

- 1/1/14  Thanks man!!!  I want OUR department back!!!!!!!!!

- 1/2/14  Oh and if you get in as chief, Towle needs to be removed as the team "Commander"

- 1/7/14  Hey brother, just between you and me, I'm emailing the mayor today to ask if I can speak with him, tired of waiting and gonna do my part, personally can't swallow this show that is being put by admin and the crap emails

- 1/8/14  Well I can imagine they would to try and intimate ppl

---

[4] "bob" is Bob Young, the training lieutenant for the GPD. (Filing No. 68-1, Deposition of Corey Decker ("Plaintiff Dep." at 39).

- 1/8/14  I don't give a shit anymore and not like if they stick around I'm gonna be promoted anyway lol
- 1/14/14  I asked bob for training records for physical tactics last year, said there isn't any, I told I know, do do [sic] I still have police powers, he said we took care if it and counted Hartmann force continuem [sic] class as it.
- 1/14/14  I said that's not right and that Hartman isn't physical tactic instructor, he said chief was there, I said is he certified, so he ran off to Guinn then went to chief, I got a call from chief he was asking about my cert and stated he is certified and had 40 hrs last year of physical tactics
- 1/14/14  Good I hope they all go
- 1/28/14  Yes man so frustrating, I can't stand them and their lack of leadership
- 2/15/14  Fuck metro, I'm applying to IFD next spring
- 2/15/14  Blubbering biscuit jelly Guinn, I'm all out of syrup in my mcgriddle seat, in my Chevy swissroll

(Filing No. 68-6, table reflecting text messages sent from Plaintiff to Lt. Austin listed in chronological order).

Two Seventh Circuit decisions guide the court's analysis.  The first of these is *Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933 (7th Cir. 2004)—a case relied upon by the Plaintiff.  The second is *Kokkinis v. Ivkovich*, 185 F.3d 840 (7th Cir. 1999).

In *Gazarkiewicz*, the plaintiff was a utility worker employed by the Town who typed a flier written by a friend that was highly critical of his boss, the Superintendent of

the Public Utilities Department.  359 F.3d at 936-37.  The flyer disclosed that the Superintendent (1) failed to promptly respond to a hazardous spill, (2) had numerous complaints filed against him from property owners, (3) was charged by another employee for sexual harassment, and (4) had "no knowledge of utilities," but nevertheless, was paid "to sit at a desk for 38K a year."  *Id.*  The flyer questioned why the Town Council hired him in light of the Town's fiscal condition, and notes that the Town Council Board was appointed rather than elected.  *Id.* at 937.  The flyer ended by stating, "GOD BLESS AMERICA, GOD BLESS FREE ELECTIONS!" and was signed "Concerned Resident."  *Id.*

In affirming the district court's decision finding the plaintiff's speech constitutionally protected, the Seventh Circuit noted:

> This case presents a paradigmatic example of speech of a public concern. The content of the flyer, which constitutes Mr. Gazarkiewicz's speech, highlights the mismanagement of a town official, questions the Council's decision to hire an official with inadequate experience and asks whether his salary is justified in light of the difficulties facing the Town.

*Id.* at 941.  The court explained that the plaintiff's "'ability to highlight the misuse of public funds or breaches of the public trust is a critical weapon in the fight against government corruption and inefficiency.'"  *Id.* (quoting *Wainscott v. Henry*, 315 F.3d 844, 848 (7th Cir. 2003)).  And the court observed that "the flyer relates those [government] inefficiencies to a matter at the core of our constitutional system: democratic elections."  *Id.*

In *Kokkinis*, *supra*, a police officer appeared in a televised evening news report covering a female officer's allegation of sex discrimination within the police department.

8

185 F.3d at 842. Appearing behind a screen and wearing a face mask, the officer said in an electronically modified voice: "If they really knew what was going on, I think they would be in utter shock." *Id.* When the reporter asked, "Why?" the officer said, "Because they are clueless as to what is going on. Everybody is so afraid of the Chief's vindictiveness. If you even dare to question any decision he makes, basically your life will be made miserable." *Id.* Following an investigation into the broadcast, the officer admitted he was the masked speaker. *Id.* The Chief of Police suspended[5] him for five days. *Id.* The officer then brought a Section 1983 claim against the Village of Bridgeview and the police chief, alleging retaliation for his statements about the police chief. *Id.* at 840.

In affirming the district court's ruling finding the officer's speech not constitutionally protected, the Seventh Circuit observed: "[I]t is necessary to look at 'the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?'" *Id.* at 844 (quoting *Callaway v. Hafeman*, 832 F.2d 414, 417 (7th Cir. 1987)). The court held:

> [T]he point of [the officer's] speech was simply to further his own goal of expressing his displeasure with the Chief's policies. The [officer's] statements during the broadcast portion of the interview were not at all related to [the female's officer's] charge of sex discrimination. They simply expressed the [officer's] personal opinion as to the Chief's vindictiveness.

*Id.* at 844.

---

[5] The Board of Fire and Police Commissioners reversed the suspension. *Id.* at 842.

9

Plaintiff argues that the content of the messages as a whole constitute protected speech because they "highlight[ed] mismanagement of the command staff and question[ed] the inadequacy of the administration as public officials." (Filing No. 67, Plaintiff's Response at 16). Plaintiff's efforts to analogize his speech with that of the plaintiff in *Gazarkiewicz* falls short. Plaintiff's text messages were not meant to bring wrongdoing to light or to raise issues of public importance such as a breach of the public trust. Instead, the point of Plaintiff's speech was to express his personal displeasure and frustration with the GPD administration and his personal hope for change.

While a few of the text messages sent on January 1 and 14, 2014 touched upon training and physical fitness standards, the point of Plaintiff's speech was simply to voice his personal belief that the department should provide better training and institute more demanding physical fitness standards. (Plaintiff Dep. at 39 ("I didn't think [Lt. Young] needed to be in that position just because I felt that our training could be a lot better, a lot more proactive."); *id.* at 40-41 ("I definitely think [physical fitness] is an issue with our department."); *id.* at 49 ("Q: And this message [1/14/14] dealt with your concern about physical training and physical tactics of the department? A: Yes. I was asking Bob a question on whether or not I actually still had my police powers in the state of Indiana because each year you have to have 24 hours minimum."). Furthermore, Plaintiff admits he has always had sufficient training hours to be certified as an officer. (*Id.* at 51 ("Q: Has there ever been a time while you've been employed with [GPD] where you didn't have sufficient training hours to be certified [as a police officer]? A: No.")).

Based on the content of Plaintiff's speech and the context within which he spoke, the court finds, as a matter of law, that his speech did not address matters of public concern. Therefore, Plaintiff's speech is not protected by the First Amendment.

Even if the messages referencing training and fitness were public speech, the undisputed evidence reflects that the basis for Plaintiff's suspension were the messages stating that he "keeps trying to get t boned" and that he was "gonna punch" his supervisors in the mouth and then kick one "in the belly." (Jester Dep. at 101-02) (testifying that Plaintiff's discipline was based on the text messages "where he was threatening physical violence towards members of the command staff and Sgt. McMichaels, as well as offering to wreck his car"). Accordingly, Defendants' motion for summary judgment on Count II of Plaintiff's Complaint for First Amendment retaliation is **GRANTED**.

### B.   Count IV, *Monell* Claims Against the City

In Count IV, Plaintiff brings *Monell* claims against the City. To establish *Monell* liability, "a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (citing *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)). An official policy or custom may be shown by: (1) the enforcement of an express policy that causes the loss; (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage that caused the loss, or (3) a person with final policymaking authority.

*Wragg v. Vill. of Thornton*, 604 F.3d 464, 467-68 (7th Cir. 2010) (citing *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001)).

Plaintiff alleges that Chief Jester, as "the final policy maker with respect to [Plaintiff's] suspension . . . caused [Plaintiff's] First Amendment deprivation." (Am. Compl. ¶¶ 75-76). Defendants argue this claim cannot survive because a municipality may only be liable if there is an underlying constitutional violation, and there is not one here.

A municipality's liability for a constitutional injury requires a finding that the individual officer is liable on the underlying substantive claim. *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000), *cert. denied*, 531 U.S. 957 (2000). As explained above, there are no text messages sent by Plaintiff that support his underlying First Amendment retaliation claim. And even if Plaintiff could establish that he sent text messages constituting constitutionally protected speech, there is no evidence that such text messages formed the basis of Chief Jester's discipline. In light of the court's ruling, the claim against the City cannot survive. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (holding that jury's finding of no constitutional injury removed basis for liability against the municipality).

Plaintiff also alleges that the City violated Plaintiff's First Amendment rights through an unofficial custom or widespread practice in the GPD of retaliating against officers who were engaging in protected speech and the Board's failure to properly supervise Chief Jester's discipline. To establish the City's liability, the plaintiff must show the City was deliberately indifferent to the risk created by the custom or practice

12

and failed to take appropriate action to protect the plaintiff. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). "Proof of deliberate indifference requires more than a showing of simple or even heightened negligence." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (quoting *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 407 (1997)) (alterations omitted). Deliberate indifference is found "when such indifference may be considered a municipal policy or custom." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). This may arise in two circumstances: (1) when, given the duties assigned to certain officers or employees, "the need for [supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the deficiency exhibits deliberate indifference on the part of the municipal policymakers;" or (2) when "a repeated pattern of constitutional violations makes the need for [supervision] plainly obvious to the city policymakers." *Id.* (internal quotations omitted).

Plaintiff argues the City, acting through the Board, upheld Chief Jester's suspension of him without exploring Lt. Ratliff's investigation or reading the text messages at issue. Had the Board done so, Plaintiff surmises, "they would have realized the obvious constitutional violations, and the efforts to retaliate against various officers for protected speech and political affiliation." (Plaintiff's Response at 32-33).

The only other officer who was disciplined for text messages arising out of Lt. Ratliff's investigation was Officer Condra. (Filing No. 68-24, Notice of Suspension). He did not appeal his suspension to the Board. (Jester Dep. at 131). The other two officers—Kalk and Holland—were suspended as a result of the investigation, but not for

13

their speech. Officer Kalk received a three-day suspension for neglect of duty on January 24, 2014, and for providing untruthful information on a case on August 8, 2013. (Filing No. 68-22, Notice of Suspension). Officer Holland received a one-day suspension for failing to stop Officer Kalk from conducting an improper search of a vehicle. (Filing No. 68-23, Notice of Suspension). Neither Officer Kalk nor Officer Holland appealed their suspensions either. (Jester Dep. at 131). Thus, Chief Jester's discipline of these officers does not support a *Monell* claim and certainly does not establish the City's deliberate indifference to the First Amendment rights of the officers. Defendants' motion for summary judgment on Count IV of Plaintiff's Complaint is **GRANTED**.

### III. Conclusion

The court finds, as a matter of law, that Plaintiff's speech was not protected by the First Amendment. Therefore, Defendants' Motion for Summary Judgment (Filing No. 58) is **GRANTED**.

**SO ORDERED** this 31st day of October 2016.

                              RICHARD L. YOUNG, CHIEF JUDGE
                              United States District Court
                              Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.